UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILLIAM IRWIN SANDERS,

            Plaintiff,

      -against-

P.M.A. INSURANCE COMPANY,

            Defendant.
------------------------------------------------------------x
WILLIAM IRWIN SANDERS,

            Plaintiff,

      -against-

N.Y.C.H.A.,[1]

            Defendant.
------------------------------------------------------------x

05-CV-3542 (DLI)

05-CV-3409 (DLI)

IRIZARRY, J.:

## MEMORANDUM AND ORDER

Plaintiff, William Irwin Sanders, who is currently a tenant in a housing project run by defendant N.Y.C.H.A., brings these pro se actions pursuant to 42 U.S.C. § 1983, alleging, inter alia, that defendant P.M.A. Insurance Company ("PMA") conspired with N.Y.C.H.A. to harass plaintiff by paying other tenants to enter plaintiff's apartment and by photographing them performing illicit acts therein. These two actions, both of which relate to the same facts, are hereby consolidated. Plaintiff's application to proceed in forma pauperis in both cases is granted solely for the purposes of this Order. However, for the reasons set forth below, these actions are hereby dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1] Although plaintiff never provides the full name of this defendant, the Court assumes, based on allegations in the complaint and on documents submitted along with the complaint, that plaintiff intends to sue the New York City Housing Authority.

Background

In July 1990, plaintiff hurt his back while working in an undisclosed capacity for JIK, Ltd., in Allentown, Pennsylvania. Plaintiff filed a workers' compensation claim and received benefits from PMA. According to a December 24, 2003, letter from PMA to an Investigator Strawser at Pennsylvania's Department of Labor and Industry, which is attached as an unenumerated exhibit to plaintiff's complaint in Sanders v. PMA Ins. Co. (hereinafter, the "PMA Complaint"), those benefits totaled approximately $32,500.

In January 1996, plaintiff and his family moved to New York City, where plaintiff applied to "H.R.A." – presumably, the City's Human Resources Administration – for assistance. Plaintiff alleges that, after learning of plaintiff's back injury, H.R.A. "contacted [PMA] and told them they had to pay for whatever services [plaintiff] received from H.R.A. while [he] was out of work due to work related back pain." PMA Complaint at 1.[2] Plaintiff implies that PMA reimbursed the City of New York for benefits H.R.A. paid to plaintiff, but PMA's December 24, 2003 letter to Investigator Strawser indicates that PMA has not paid any benefits on plaintiff's behalf since 1994.

In January 1997, plaintiff and his family moved into a N.Y.C.H.A. apartment. In June 1997, plaintiff became convinced that "some one was coming into [his] apartment when [he] was at the Doctor and the kids were in school." Id. At first, plaintiff only complained to "the manager," but soon he "started calling the Police." Id.

In November 1998, an unnamed fellow tenant allegedly told plaintiff that "a company who paid [plaintiff] for a work injury was following [him]." Id. In March 2000, another unnamed tenant

---

[2]The citations herein refer to enumerated pages in the complaints. Since the first two pages of both complaints lack page numbers, a citation to page 1 therefore refers to the third page of the complaint.

2

allegedly told plaintiff "that a company that paid [plaintiff] for a work injury was going into [his] apartment when [he] was not home." Id. Plaintiff then "started sending Letters to the Justice Department." Id.

In July 2001, the mother of plaintiff's children allegedly told plaintiff "to look out that an insurance company was after [him] because they were paying ... money" to the City on his behalf. Id. at 2. Plaintiff alleges that in November 2001, he was twice awakened by persons who punched him, then ran from the apartment. Id. Plaintiff called the police, who agreed to "keep a watch on [his] apartment," but apparently took no further action. Nonetheless, plaintiff alleges that in December 2001, he was awakened by a masked gunman who twisted plaintiff's arm and demanded at gunpoint that he "stop calling the Police." Id.

There is no need to describe every incident which has allegedly occurred since December 2001. Suffice it to say that plaintiff alleges that PMA has paid at least eight of his neighbors to illegally enter his apartment, and that these tenants have trespassed in his apartment numerous times: at least 8 times in January 2005 and at least 11 times in June 2005 alone. Plaintiff alleges that PMA has also paid N.Y.C.H.A. maintenance employees and locksmiths to admit these tenants to plaintiff's apartment, where PMA allegedly takes pornographic photographs of underage girls as well as photographs of the tenants using drugs. According to plaintiff, PMA plans to implicate plaintiff in these nefarious activities by claiming that plaintiff himself admitted the tenants to the apartment.

The gunman who allegedly visited plaintiff in December 2001 did not succeed in deterring plaintiff from calling the police. To the contrary, according to police documents attached to an undated letter which plaintiff submitted in connection with his action against N.Y.C.H.A., plaintiff called the New York City Police Department 11 times in October 2004 alone, and twice within one

hour on October 22, 2004. Undated Letter from Plaintiff to Judge Irizarry, received July 28, 2005. In the complaint he filed against N.Y.C.H.A. (hereinafter, the "NYCHA Complaint"), plaintiff alleges that the police visited his apartment six times between June 10 and June 24, 2005, in response to 911 calls of unspecified origin. NYCHA Complaint at 2. In addition, plaintiff's undated letter received by the Court on July 28, 2005, states that "the police have been called to [plaintiff's] apartment 16 times in the past 26 days."

The police have not taken any action on plaintiff's complaints. While most of the police reports attached to plaintiff's submissions do not indicate a disposition, one such report – a NYPD Quality of Life Report dated April 18, 2005 – refers to the "complainant" (i.e., plaintiff) as an "EDP" – an emotionally disturbed person. See Unenumerated Exhibit to Undated Letter from Plaintiff to Judge Irizarry, received July 28, 2005. Although the police reports indicate that plaintiff provided police with the names and addresses of suspects, plaintiff's complaints do not allege that any suspects were ever arrested. Indeed, the only arrest alleged in either complaint is an arrest of plaintiff himself on indecent exposure charges purportedly fabricated by one of the tenants who plaintiff accused of trespassing in his apartment. Plaintiff does not indicate the outcome of the case arising from this arrest, except to state that the police took him to a psychiatric hospital, where he remained for approximately three weeks. NYCHA Complaint at 1.

Plaintiff also has not received assistance from the many other organizations he has contacted in an effort to stop PMA's "harassment." According to documents attached to plaintiff's complaints and correspondence, plaintiff has contacted at least four federal agencies (the Equal Employment Opportunity Commission, the Department of Justice, the Department of Housing and Urban Development, and the Department of Health and Human Services); the Attorney General and

Insurance Department in both New York State and the Commonwealth of Pennsylvania; three other State agencies (the Pennsylvania Bureau of Workers' Compensation, the New York State Division of Human Rights and the New York State Division of Housing and Community Renewal); four New York City entities (the New York City Council, the Public Advocate for the City of New York, the 311 Citizen Service Center operated by the Mayor's Office, and the New York City Housing Authority); the National Association of Insurance Commissioners and two United States Congressmen. In addition, the NYCHA Complaint alleges that he has also contacted a New York State Assemblywoman and the "F.T.C." – presumably the Federal Trade Commission. NYCHA Complaint at 1-2. While many of these organizations have expressed concern and some have conducted investigations, none has been able to resolve plaintiff's problems.

Plaintiff is now seeking relief in this Court. The NYCHA Complaint, which was filed in July 2005 and alleges that this Court has jurisdiction pursuant to 42 U.S.C. § 1983, seeks $77,000 in damages and a permanent injunction preventing NYCHA from "trying to get into [plaintiff's] apartment when [he is] sleep[ing,] criminal tresspassing (sic), mail tampering, letting other tenants into [his] apartment, taint[ing his] food and water, assult (sic)." Id. at 4. The PMA Complaint – which was filed about one week after the NYCHA Complaint and alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 42 U.S.C. § 2000e, as well as 42 U.S.C. § 1983 – requests that this Court impose "civil and criminal punishment on the defendant." PMA Complaint at 6. The PMA Complaint initially requests money damages of $77,000, id. at 3, but later increases that demand by $1,000, stating, "I dont (sic) think that ... $78,000 is to (sic) much to ask." Id. at 6. In addition, plaintiff seeks an "order of protection" directing PMA to leave him alone.

Discussion

Title 28, section 1915(e)(2)(B), of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). An action is frivolous when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy. Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 33 (1992).

While this Court is well aware that pro se complaints must be read liberally, see McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004), and that leave to amend such complaints must be granted if "a liberal reading of the complaint gives any indication that a valid claim might be stated," see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), plaintiff's claims are clearly frivolous. As discussed above, plaintiff's complaints assert that, although PMA denies having paid workers' compensation benefits to plaintiff since 1994, PMA is in fact reimbursing the City of New York for plaintiff's public assistance benefits and harassing plaintiff in retaliation for having to pay such benefits. Plaintiff is further asserting that PMA is retaliating against him by having neighbors enter plaintiff's apartment while he is away and by taking photographs of the neighbors engaging in illegal activities. Plaintiff suggests that PMA intends to use the photographs to harm plaintiff by implying that he admitted the neighbors to his apartment for these illicit purposes. However, although PMA has allegedly been engaging in this tactic for years, plaintiff does not allege that any criminal, civil or eviction proceedings have been initiated against him.

6

Plaintiff's delusional claims "rise to the level of the irrational or the wholly incredible." See Denton, 504 U.S. at 33. This conclusion has been reached not only by this Court, but by other agencies and entities which plaintiff has contacted with respect to his problems. Most notably, the New York City Police Department, which plaintiff has contacted many times with the names and addresses of suspects, has never arrested any of the persons plaintiff has named. Rather, the only arrest referenced in plaintiff's complaints is an arrest of plaintiff himself, which resulted in plaintiff's involuntary commitment to a mental hospital. Furthermore, an April 18, 2005, police report indicates that the police have concluded that plaintiff is an "EDP" – an emotionally disturbed person. See Unenumerated Exhibit to Undated Letter from Plaintiff to Judge Irizarry, received July 28, 2005. Similarly, none of the many agencies and organizations contacted by plaintiff, some of which have apparently investigated plaintiff's allegations, have taken any action on plaintiff's complaints.

Conclusion

For the reasons set forth above, this Court concludes that plaintiff's complaints are devoid of merit and are the product of fantasy or delusion. Accordingly, plaintiff's complaints in these two actions are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff's request for an order of protection is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal.

SO ORDERED.

Dated: Brooklyn, New York
August 29, 2005

DORA L. IRIZARRY
United States District Judge

7